**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **A.R.R.,** *et al.*,<br><br>        **Plaintiffs,**<br><br>                **v.**<br><br>**MARCO RUBIO,** *et al.*,<br><br>        **Defendants.** | **Civil Action No. 26-1921** |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs in this case — six unrelated Afghan asylees residing in Colorado and their respective wives and children stuck in the country they fled — commence this lawsuit as part of their efforts to finally reunite.  See ECF No. 1 (Compl.), ¶¶ 1–7, 13, 17, 27, 29, 36, 40.  Securing asylum status in 2023, the asylees successfully applied for Form I-730 "Asylee Relative Petitions" for their (collectively) 24 immediate family members in Afghanistan, who did their part by verifying their requisite familial relationships in consular interviews in Islamabad, Pakistan.  Id., ¶¶ 2–3, 51–97.  Their efforts, however, have been stalled.  In the first year of his current administration, the President issued two proclamations fully suspending entry from initially twelve and later twenty countries, Afghanistan among them.  Id., ¶¶ 110, 116; see also Proclamation No. 10949, 90 Fed. Reg. 24497 (June 4, 2025); Proclamation No. 10998, 90 Fed. Reg. 59717 (Dec. 16, 2025).  The State Department, in turn, disseminated a series of "cables" directing consular officers on how to implement the new policy, including processes for granting narrow "National Interest Exceptions."  Id., ¶¶ 113–15, 117–18.  So instead of issuing the I-730-holding relatives documents for travel to the U.S., the American Embassy in Islamabad issued

1

letters deeming them ineligible for entry and unqualified for a National Interest Exception.  Id., ¶¶ 57, 65, 72, 79, 86, 93.

Plaintiffs now sue the Secretary of State and the Department he leads under the Administrative Procedure Act, arguing that the cables amount to a nationality-based entry ban that is arbitrary and capricious, exceeds statutory authority, violates the Department's own rules for adjudicating cases individually, and flouts notice-and-comment requirements.  Id., ¶¶ 119–61.  They also contend that State has unreasonably delayed the ultimate adjudication of the I-730 petitions.  Id., ¶¶ 162–69.  All this Plaintiffs seek to do pseudonymously, citing concerns for the safety of those among them still in Afghanistan.  See ECF Nos. 2 (Mot.) at 1–2; 2-1 (Memo.) at 1–2.  The Court will grant their Motion to Proceed Under Pseudonym, subject to any further consideration by the United States District Judge to whom this case is randomly assigned.  See LCvR 40.7(f) (providing that Chief Judge shall "hear and determine . . . motion[s] to seal the complaint and motion[s] to file a pseudonymous complaint . . . .").

I.    **Legal Standard**

Complaints must typically identify a plaintiff.  See Fed. R. Civ. P. 10(a); LCvR 5.1(c)(1). This identification requirement reflects the "presumption in favor of disclosure [of litigants' identities], which stems from the 'general public interest in the openness of governmental processes,' and, more specifically, from the tradition of open judicial proceedings."  In re Sealed Case, 931 F.3d 92, 96 (D.C. Cir. 2019) (quoting Washington Legal Found. v. U.S. Sentencing Comm'n, 89 F.3d 897, 899 (D.C. Cir. 1996)).  A party moving to proceed pseudonymously thus "bears the weighty burden of both demonstrating a concrete need for such secrecy[] and identifying the consequences that would likely befall it if forced to proceed in its own name."  In re Sealed Case, 971 F.3d 324, 326 (D.C. Cir. 2020).  As a result, the court must "'balance the

litigant's legitimate interest in anonymity against countervailing interests in full disclosure'" by applying a "flexible and fact driven" balancing test.  Id. (quoting In re Sealed Case, 931 F.3d at 96).  That test assesses "five non-exhaustive factors":

> (1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature;
> (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or, even more critically, to innocent non-parties;
> (3) the ages of the persons whose privacy interests are sought to be protected;
> (4) whether the action is against a governmental or private party; and relatedly,
> (5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

Id. at 326–27 (quoting In re Sealed Case, 931 F.3d at 97) (cleaned up).

**II.      Analysis**

Plaintiffs have met their burden to overcome the presumption in favor of disclosing their identities.  The Court will address the factors in turn.

A.      Factors One and Two

The first two factors, taken together, support pseudonymity.  Plaintiffs do not seek to go unnamed "merely to avoid the annoyance and criticism that may attend any litigation," but to "preserve privacy in a matter of [a] sensitive and highly personal nature."  Id. at 326 (quoting In re Sealed Case, 931 F.3d at 97) (alteration in original).  Such matters can include "maintaining their and their family members' safety."  Sponsor v. Mayorkas, 2023 WL 2598685, at *2 (D.D.C. Mar. 22, 2023).  Although Plaintiffs' filings in this case — even the sealed ones — are short on detail, they express fear of Taliban policies restricting women's rights and conscripting young men, see Compl., ¶¶ 58, 66, 73, 80, 87, 94, and "fear [of] any further retribution should their names be tied to a lawsuit seeking to leave Afghanistan."  Memo. at 5.  More specifically,

3

one Plaintiff-family belonging to a racial and religious minority group expresses fears over ongoing ethnic cleansing of that group in Afghanistan.  See Compl., ¶ 58.  These fears, furthermore, come in the specific context of asylum, which this Court has indicated warrants particular sensitivity.  See, e.g., J.G.G. v. Trump, 2025 WL 1352316, at *2 (D.D.C. May 8, 2025) (agreeing with plaintiff that federal regulations "provide for the confidentiality of asylum applicants" in part given risk of retaliation) (quoting plaintiffs' motion and citing Anim v. Mukasey, 535 F.3d 243, 253 (4th Cir. 2008)); Doe v. U.S. Immigr. & Customs Enf't, 2024 WL 5483092, at *2 (D.D.C. Mar. 8, 2024) (acknowledging risks if home government learned of plaintiff's identity and asylum claim).

Plaintiffs' filings are generalized almost to a fault, and the Court's prior acknowledgements of the particular sensitivities of asylum have generally benefited from detailed documentation of the abuses that underlay those plaintiffs' asylum claims.  See, e.g., J.Z. v. U.S. Dep't of Homeland Sec., 2026 WL 1470530, at * 2 (D.D.C. May 26, 2026); Coal. for Humane Immigrant Rights v. Mullin, 2026 WL 936034, at *1–2 (D.D.C. Apr. 7, 2026); Molina v. U.S. Dep't of Homeland Sec., 2025 WL 2800807, at *1 (D.D.C. Oct. 1, 2025); J.G.G, 2025 WL 1352316, at *2; Sponsor, 2023 WL 2598685, at *2.  The Court finds, however, that the concerns for family safety and fears of retribution that Plaintiffs do articulate here, particularly in the sensitive context of asylum, are sufficient to tilt the first two factors in their favor.

B.      Factors Three Through Five

The third factor plainly favors pseudonymity because this suit implicates the interests of minors.  Of the 30 Plaintiffs, 16 are minors living in Afghanistan.  See Compl., ¶¶ 15–16, 21–26, 31–35, 38–39, 42.  Factor three's support for pseudonymity extends even to the adult Plaintiffs: as either parents or siblings of minor Plaintiffs, their unmasking would risk revealing the minor

Plaintiffs' identities, too. Id.; see Coal. for Humane Immigrant Rights, 2026 WL 936034, at *2 (citing Doe v. Blinken, No. 23-2997, ECF No. 3 (Mem. Op. & Order) at 4 (D.D.C. Oct. 13, 2023) ("To the extent that revealing Plaintiff's identity would also reveal the identities of his four minor children, proceeding pseudonymously would be appropriate.")).

The fourth factor, which concerns the identity of the defendant, is less favorable to Plaintiffs. When the defendant is the government, this factor turns on whether the plaintiff seeks programmatic or individual relief. Molina, 2025 WL 2800807, at *2; Doe v. Blinken, No. 23-2997, Mem. Op. & Order at 4–5. Plaintiffs here seek both: they ask this Court to declare a series of State Department directives generally unlawful and to order full adjudication of Plaintiffs' I-730 petitions in particular. See Compl. at 30. In such hybrid-relief cases, this Court has considered whether other factors tilt the balance toward pseudonymity assuming the relief sought is essentially programmatic. Molina, 2025 WL 2800807, at *2 (finding that where both types of relief sought, "case nonetheless presents the truly exceptional circumstances that overcome the presumption against pseudonymity even for programmatic relief") (internal quotation marks and citation omitted); see also Coal. for Humane Immigrant Rights, 2026 WL 936034, at *2 (following Molina).

The fifth and final factor, which considers the risk of unfairness to the defendant, favors pseudonymity. Plaintiffs confirm that Defendants know their identities, see Memo. at 5, and this factor does not counsel disclosure when that is the case. In re Sealed Case, 971 F.3d at 326 n.1 (explaining that this factor is "not implicated" where defendant knows plaintiff's identity); Doe v. U.S. Immigr. & Customs Enf't, 2024 WL 5483092, at *3 (fifth factor supports motion where defendant already knows plaintiff's identity).

With most factors weighing toward pseudonymity, the Court will grant the Motion.

5

**III.    Conclusion**

The Court accordingly ORDERS that:

1. Plaintiffs' [2] Motion to Proceed Under Pseudonym is GRANTED;

2. All parties shall use the pseudonyms listed in the Complaint and redact information that would identify Plaintiffs in all documents filed in this action;

3. Defendants shall not disclose Plaintiffs' identities to any third party unless such disclosure is necessary to defend against this action; and

4. Within fourteen days of this Order, Plaintiffs shall file:

   a. A pseudonymous and redacted version of their [2] Motion and any attachments as a Notice to the Court on the public docket; and

   b. A sealed declaration containing their real names and residential addresses.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  June 24, 2026